LAKE v. STODDARD et al.

(Supreme Court, Appellate Division, Third Department. March 11, 1908.)

1. CHARITIES—OFFICERS OF CHARITABLE INSTITUTIONS—STATUTORY PROVISIONS—ROME STATE CUSTODIAL ASYLUM—TREASURER.

Laws 1893, p. 691, c. 348, created Oneida State Custodial Asylum, and provided for appointment of a superintendent, who should act as treasurer. Laws 1894, p. 806, c. 382, changed the name to "Rome State Custodial Asylum," and provided for the appointment of a salaried treasurer. Laws 1895, p. 29, c. 59, repealed the prior acts, but provided for the appointment of a salaried treasurer and his duties. The State Charities Law, Laws 1896, p. 511, c. 546, relating to all state charitable institutions, repealed Laws 1895, p. 29, c. 59, but article 6 of the act (page 531), relating to the Rome Asylum, made no provision for a treasurer, though it provided for a board of managers as before and other officers, including a superintendent, and detailed the powers of the board, including the general direction and control of all the property and concerns of the asylum and its interests, and required them to report annually to the Legislature. Other articles of the act relating to five other institutions provide for the office of treasurer for such institutions, and article 8 (page 543), relating to a sixth other institution, requires the board of managers thereof to appoint a superintendent and such other officers as they deem necessary. Laws 1904, p. 1156, c. 462, amending State Charities Law, p. 531, c. 546, art. 6, creates the office of vice president for the Rome Asylum, but makes no allusion to a treasurer. *Held*, that the duties of treasurer of the Rome Asylum were to be performed by the managers and superintendent, and that there was to be no separate office of treasurer therefor.

2. SAME—RIGHT TO SALARY CLASSIFICATION.

Laws 1903, p. 524, c. 239, amending State Finance Law, Laws 1897, p. 343, c. 413, § 17, requires the State Comptroller and the president of the State Board of Charities to classify into grades, from time to time, the officers and employés of the various charitable institutions, etc., and recommend to the Governor such change in the salaries or wages as may seem proper. State Charities Law, Laws 1896, p. 532, c. 546, § 93, makes the superintendent of the Rome State Custodial Asylum its chief executive officer and charges him with the appointment of clerks, etc. Plaintiff was not appointed to any position by the superintendent, nor was his salary fixed as required by statute, but he was appointed treasurer of the Rome Asylum by resolution of the board of managers. *Held* that, as the board had no authority to make such an appointment to an office not provided for by law, plaintiff had no office nor right to compensation, and the Salary Classification Commission could not be compelled by mandamus to classify him into a grade as treasurer of the Rome Asylum.

Appeal from Special Term, Albany County.

Application by Harry G. Lake for mandamus to compel Enoch V. Stoddard and another, composing the Salary Classification Commission, to classify him into a grade as treasurer of the Rome State Custodial Asylum. From an order denying the application, relator appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Wager & McAdam (A. L. McAdam, of counsel), for appellant.
William S. Jackson, Atty. Gen., and Timothy I. Dillon, Deputy Atty. Gen., for respondents.

COCHRANE, J. By chapter 239, p. 524, Laws 1903, amending section 17 of the "State Finance Law" (Laws 1897, p. 343, c. 413), it is provided that:

"The State Comptroller and the president of the State Board of Charities shall from time to time classify into grades the officers and employés of the various charitable and reformatory institutions required by law to report to the fiscal supervisor and in the month of September of each year recommend to the Governor such changes in the salaries or wages of such officers or employés for the ensuing fiscal year as may seem proper, but such changes shall not be made unless the Governor shall approve the same in writing."

Under the above provision this proceeding is instituted by the appellant, who claims to be the treasurer of the Rome State Custodial Asylum. He was appointed such treasurer in the year 1902 by the board of managers of said asylum, who also fixed his salary at $1,200 a year. He has given a bond as such treasurer, has performed the duties appertaining to such office, and for two years, and until January, 1905, received said compensation from the state. Since the latter date he has been unable to receive compensation because the respondents have refused to classify him into a grade. Their reason for such refusal is that there is no statutory provision for a treasurer of said asylum or for any salary therefor. It also appears that of 17 institutions reporting to the state fiscal supervisor but one, the Craig Colony for Epileptics, has a treasurer who receives compensation, and that compensation is made to him for the reason that the statute makes special provision that his salary shall be fixed at not exceeding $1,500 a year; that the duties of treasurer of said institutions are ordinarily performed by some member of the board of managers without compensation. Both the fiscal supervisor of state charities and the respondents further take the position that there is no occasion for a salaried treasurer of this institution, for the reason that adequate provision is otherwise made for the financial branch thereof.

The question presented for our determination is whether the statute creates or contemplates the creation of the office or position of treasurer of said asylum as a distinct office or position, for the performance of the duties of which the person performing such duties may demand compensation from the state. The "Oneida State Custodial Asylum" was created by chapter 348, p. 691, Laws 1893. It was therein provided that said asylum should be governed by a board of three trustees, who should appoint a superintendent, and that said superintendent, should, in addition to other specified duties, also act as treasurer and clerk of said board, and give a bond for the faithful performance of his duties in such sum and with such sureties as the State Comptroller should prescribe. Chapter 382, p. 806, Laws 1894, changed the name of said institution to its present name, the "Rome State Custodial Asylum," and provided that the trustees should appoint a superintendent

and a treasurer, and fixed the duties and provided for the salaries of both such superintendent and treasurer. Chapter 59, p. 29, Laws 1895, repealed the two last-mentioned acts, and provided that the Rome State Custodial Asylum should be governed by a board of eleven managers, and that said board of managers should have power to appoint one of their number president of said board and one of their number secretary. It also provided that such managers should appoint a superintendent and a treasurer, and prescribed the duties and provided for the salaries of such superintendent and treasurer. In 1896 the state charities law was passed. Laws 1896, p. 511, c. 546. One of the purposes of this act was to bring within its scope and provisions all the charitable institutions of the state. It repealed chapter 59, p. 29, Laws 1895. Article 6 of the act relates to the Rome State Custodial Asylum. It continues its control and management under a board of 11 managers as did the act of 1895, and directs that they shall appoint one of their number as president and another as secretary. It specifically details the power and duties of the managers, which includes the general direction and control of all the property and concerns of the asylum and its interests, and requires them to report annually to the Legislature for the preceding fiscal year the affairs and conditions of the asylum. It also particularizes the duties of the superintendent. No reference is made to the office of treasurer. Seven different articles of the act relate to as many different state charitable institutions, and in respect to each one of such institutions, save only the Rome State Custodial Asylum, specific and definite provisons are made for the office of treasurer, except that in article 8 the provision is that the managers shall appoint a superintendent and such other officers as they may deem necessary. This fact, coupled with the fact that the law relating to the Rome State Custodial Asylum as it was when repealed by the state charities law made specific provision for a treasurer, shows unmistakably a positive and affirmative legislative intent to make no provision for a treasurer for the latter institution. Such intent is further emphasized by the fact that chapter 462, p. 1156, Laws 1904, amending article 6 of the state charities law concerning the Rome Asylum, created another office, viz., vice president, but still omitted any allusion to a treasurer.

It is true that article 3 of the state charities law provides for reports by treasurers of the state charitable institutions, and otherwise makes reference to such treasurers. But this means the treasurers specifically created by statute and in the case of the Rome Asylum the person who performs the corresponding functions of a treasurer. Some one, of course, must perform the duties which are ordinarily comprehended within the idea conveyed by the term "treasurer." But such duties in the case of the Rome Asylum must be performed by the managers or superintendent. The statute excludes the idea of the office of treasurer as a distinct and generic office. There is no authority, therefore, for the respondents to classify such office into a grade as the appellant seeks to require them to do. His appointment by resolution or by-law of the board of managers, being without statutory authority, does not vest him with any office, or give him any claim for compensation against the state. Section 93 of the state charities law makes the super-

intendent of the Rome Asylum its chief executive officer, and charges him with the duty of appointing clerks, bookkeepers, and all subordinate employés, and of discharging them when in his judgment it is necessary for the good of the institution. Section 17 of the state finance law (Laws 1897, p. 343, c. 413), as amended by chapter 383, p. 836, Laws 1899, chapter 432, p. 1122, Laws 1901, and chapter 239, p. 524, Laws 1903, requires the State Comptroller and president of the State Board of Charities to fix the salaries and wages of such employés subject to the approval of the Governor. The appellant has not been appointed to any position by the superintendent of the institution, nor has his salary or wages been fixed as required by statute. His claim for compensation is based solely on an appointment by the board of managers which they were without legal authority to make. Whatever services he has performed have been under such unauthorized appointment, and were merely such as were required of other officers or employés of the institution.

The order should be affirmed, with costs.